EXHIBIT
113



**Fill in this information to identify the case:**

Debtor 1    Scott K. Williams

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: District of Montana

Case number   22-90147-BPH

---

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Estate of Hugh L. Williams, and its heirs Kent Williams, Duffy Williams, Brenda Harbers, Karen
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor   Priest, and Mary Ella Carter

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Worden Thane PC
Name

321 W. Broadway, Ste 300
Number   Street

Missoula    MT    59802
City    State    ZIP Code

Contact phone   406-721-3400

Contact email   mking@wordenthane.com

**Where should payments to the creditor be sent?** (if different)

Kent Williams
Name

2786 Oakwood Drive
Number   Street

Bountiful    UT    84010
City    State    ZIP Code

Contact phone   (801)520-7055

Contact email   kentw@centurylink.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

**Part 2:**    Give Information About the Claim as of the Date the Case Was Filed

6. **Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

7. **How much is the claim?**    $_____ 410,516.03 . **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Breach of Fidicuary Duty

9. **Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe:

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $_____ Est.

**Amount of the claim that is secured:**    $_____

**Amount of the claim that is unsecured:** $_____ 410,516.03 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____

**Annual Interest Rate** (when case was filed) _____%

☐ Fixed

☐ Variable

10. **Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

11. **Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

|  | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  05 / 26 / 2023
 MM / DD / YYYY

/s/ Martin S. King
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Martin S. King |
|---|---|
|  | First name          Middle name          Last name |
| Title | Attorney |
| Company | Worden Thane, PC |
|  | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 321 W. Broadway, Suite 300 |
|  | Number          Street |
|  | Missoula          MT          59802 |
|  | City          State          ZIP Code |
| Contact phone | 406-721-3400          Email mking@wordenthane.com |

**Exhibit A**
**PROOF OF CLAIM**

**Debtors:** Scott K. Williams
**Case No.:** 22-90147-BPH
**Creditor:** Estate of Hugh L. Williams, and his heirs and devisees, Kent Williams, Duffy Williams, Brenda Harbers, Karen Priest, and Mary Ella Carter

Itemization of Amount Due as of 9/30/2022:

| | |
|---|---:|
| Improper "Severance" | $75,000.00 |
| Improper Personal Expenses | $130,715.67 |
| Improperly Retained Inventory | $142,110.27 |
| Improper Contributions | $4,800 |
| Attorney Fees in Arbitration | $12,346.59 |
| Attorney Fees in Arbitration | $43,005.94 |
| Arbitration Travel Expenses | 2,537.56 |
| | |
| | $410,516.03 |

**TOTAL CLAIM AS OF 9/30/2022:** $410,516.03

**Summary of Supporting Documents Attached**

EX.

1. Expense Breakdown
2. Certificate of Trust
3. Petition for Removal of Trustee and Reimbursement of Misused Funds

Improper Personal
**EXPENSE BREAKDOWN**

American Express Overpayments: $99,020.26 ($78,785.39 + $20,234.87)

Fuel Payments: $26,228.24

Food Payments: $5,467.51

Total: $130,715.67

**Overpayments from Hugh's RV to Amex**

| | |
|---|---|
| 2017 Overpayment on Page 44 of the General Ledger: | $18,069.64 |
| 2018 Overpayment on Page 62 of the General Ledger: | $33,431.34 |
| 2019 Overpayment on Page 68 of the General Ledger: | $27,284.41 |
| | _____ |
| | $78,785.39 |

**Overpayments from Hugh's Trust to Amex**

| | |
|---|---|
| Overpayment on Page 2 of the Trust General Ledger: | $20,234.87 |

**Fuel Payments**

| | |
|---|---|
| Total Fuel Payments on Page 117 of Hugh's RV General Ledger: | $26,228.24 |

**Fuel Payments**

| | |
|---|---|
| Total Food Payments on Page 123 of Hugh's RV General Ledger: | $5,467.51 |
| | _____ |
| | $130,715.67 |

HWE000314

# CERTIFICATE OF TRUST

1. ## TRUST INFORMATION.

   The Trust name is *THE HUGH L. WILLIAMS FAMILY TRUST.*
   The date of the Trust is the _23_ day of April, 2018
   The Trust address is 521 E. Chelsea Drive, Bountiful, Utah
   The Grantor is HUGH LEE WILLIAMS.
   The current Trustee is HUGH LEE WILLIAMS.
   The primary Beneficiary of the Trust is the Grantor.
   The Trust is amendable and revocable by the Grantor.
   The Successor Trustee(s) are named in the Trust.
   The Trust is governed by the laws of the Grantor's state of residency.

2. ## CERTIFICATION.

   The Trustee certifies that he has the power, under the Trust Agreement and applicable law, to enter into transactions for the benefit of the Trust. The Trustee further certifies that he may execute any documents on behalf of the Trust which may be required.

   The Trustee represents, warrants, and certifies the representations made in this Certification are true, complete and accurate, that the Trust is in full force and effect, and that the Trust Agreement has not been amended, modified or revoked in any manner which would cause the representations contained in this Certification to be inaccurate or incorrect.

   The Trustee hereby indemnifies you from, and holds you harmless against, any claims, judgements, or other liabilities or costs arising out of or related to any actual or alleged improper or unsuitable actions taken at the Trustee's instructions.

   IN WITNESS WHEREOF, the undersigned Trustee has duly executed this Certificate of Trust on this _23_ of April, 2018.

   HUGH LEE WILLIAMS

STATE OF UTAH      )
                   : ss.
COUNTY OF DAVIS  )

   On this _23_ of April, 2018, personally appeared before me HUGH LEE WILLIAMS, proved on the basis of satisfactory evidence to be the person(s) whose name(s) are subscribed to this instrument, and acknowledged they executed the same freely and voluntarily. Witness my hand and official seal.



TIM BUNKER
Notary Public – State of Utah
Comm. No. 695396
My Commission Expires on
Jun 16, 2021

Notary Public

Zenock Bishop #16258
50 West Forest Street #104
Brigham City, Utah 84302
Phone: (435) 535-1708
Email: zenock@bishoplg.com

*Counsel for the Petitioner*

| | | |
|---|---|---|
| **IN THE MATTER OF** | ) | **PETITION FOR REMOVAL OF** |
| | ) | **TRUSTEE AND REIMBURSEMENT** |
| **THE ESTATE OF HUGH L.** | ) | **OF MISUSED FUNDS** |
| **WILLIAMS** | ) | |
| | ) | |

Petitioner, Kent Paul Williams, through counsel, and pursuant to Utah Code §78B-11 and Article XIII of *The Hugh L. Williams Family Trust*, respectfully petitions for Arbitration for removal of Scott K. Williams as Trustee of *The Hugh L. Williams Family Trust*, and for reimbursement of misused fund by Scott K. Williams as the fiduciary of Hugh L. Williams' assets.

Because parties share the same last name, with the exception of Hugh Williams (who is referred to as "Mr. Williams"), parties are referred to by their first names. No disrespect is intended.

## BACKGROUND

1.  On April 23, 2018, Hugh L. Williams ("Mr. Williams") executed *The Hugh L. Williams Family Trust* ("Trust") (Exhibit 1).

2.  On April 23, 2018, Mr. Williams also executed a Pour Over Will (Exhibit 2).

3.  On April 23, 2018, Mr. Williams also executed a *Durable Power of Attorney* ("Power of Attorney") (Exhibit 3).

4.  The Trust names Mr. Williams as Trustee, and Scott K. Williams ("Scott") as Successor Trustee of the Trust (Exhibit 1, ¶1.04).

5.  The Power of Attorney lists Scott as the Agent (Exhibit 3, ¶1).

1

**6.**     Even before the execution of the Power of Attorney, Scott was signing on behalf of Mr. Williams, as Mr. Williams' "POA" (see Exhibit 4).

**7.**     In addition to his in dual roles as Mr. Williams' Agent under the Power of Attorney and Trustee of the Trust, Scott was a 1099 Independent Contractor for Mr. Williams' Company, Hugh's RV, but Scott was never a W2 employee or an owner of Hugh's RV. (see Exhibit 5. The first page ("page 125") of the exhibit shows that "Payroll Expenses" were $0. The remaining pages ("pages 85-89") show that Scott's payments were as "Subcontracted Services").

**8.**     Mr. Williams passed away on January 17, 2019.

**9.**     After, Mr. Williams passing, the Trust names Scott and Petitioner Kent Paul Williams ("Kent") as beneficiaries of the Trust—entitled to an equal portion of the Trust assets along with their siblings: Mary Ella Carter, Brenda Lee Harbors, Karen Sue Priest, and Duffy Jay Williams. (Exhibit 1, ¶1.04)

**10.**     Hugh's RV property was sold on June 21, 2019 (Exhibit 6).

**11.**     In July 2019, the Trustee (Scott) divided and made an initial distribution to the beneficiaries as follows (see Exhibit 7):

| | |
|---|---|
| Mary Carter | $351,747.71 ($349,247.71 + $2,500 for Dodge Truck) |
| Kent Williams | $351,747.71 |
| Karen Priest | $351,747.71 |
| Brenda Harbors | $351,747.71 |
| Duffy Williams | $351,747.71 (350,547.71 + $1,200 for Ford Tractor) |
| Scott Williams | $426,747.71 |

**12.**     In order to receive the initial distribution, the Trustee required that the beneficiaries sign a waiver of liability—which stated that the beneficiary (1) "accepts such property [the initial distribution] in full payment and satisfaction of the undersigned's interest in the estate"; (2)

2

"waives any accounting required under the Utah Uniform Probate Code"; and (3) "releases the Personal Representative of the estate [Scott] from any and all liability in connection with the undersigned's interest in the estate." (Exhibit 8).

**13.** Petitioner Kent Williams refused to sign said waiver of liability. Instead, Kent signed a different receipt of distribution that (1) acknowledged receipt of the distribution; (2) "accepts such property as partial payment of $351,747.71"; and (3) that "a detailed final accounting of the estate and trust will be available at final settlement between August 31, 2019, to September 30, 2019." (Exhibit 9).

**14.** Despite stating that there would be a final settlement by September 30, 2019 (see Exhibit 9), there has never been a final settlement of the Trust.

**15.** On August 31, 2021, Scott provided an accounting that included a General Ledger of Hugh's RV (Exhibit 10), as well as a General Ledger of the Trust Account (Exhibit 11).

## ARGUMENT

**16.** As Mr. Williams' Agent under his Power of Attorney and Trustee of Mr. Williams' Trust, Scott has repeatedly engaged in self-dealing and abused and misused Mr. Williams' funds and Trust funds, and breached his fiduciary duty to the beneficiaries by:

    a. Paying himself an extra $75,000.00 distribution from the Trust.

    b. Using Hugh's RV Funds and Trust Funds to pay at least $130,715.67 of his own personal expenses (including at least $99,020.26 on his personal American Express and $31,695.41 to pay for his personal fuel and food).

    c. Commingling Hugh's RV assets, Trust assets, and his own personal assets, making it very difficult to determine which of the claimed "business expenses"—paid with Scott's personal credit card—are legitimate.

    d. Not equally distributing vehicles and boats that were owned by Hugh's RV.

3

e. Not equally distributing the remaining inventory from Hugh's RV (which inventory was purchased with a loan that was paid off at the closing of the sale of the Hugh's RV property).

f. Still making consistent payments for tithing from Trust funds for months after Mr. Williams had passed away.

g. Failing to expeditiously administer the Trust, which still holds assets nearly 3 years after the death of Mr. Williams.

17.    Furthermore, Petitioner reserves the right to amend or add additional causes of action to this Petition as they become known.

## FIRST BREACH OF FIDUCIARY DUTY:
### <u>TRUSTEE SEVERENCE PAY</u>

18.    Utah Code §75-7-803, requires that "the trustee shall act impartially in investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests."

19.    The Trust requires the Trustee to divide the Trust estate "into equal and partial shares for each living child of the Trustor." (See Exhibit 1, Article IV(E)).

20.    In July 2019, the Trustee, Scott, divided and distributed Trust assets between the beneficiaries as follows (see Exhibits 7):

| | |
|---|---|
| Mary Carter | $351,747.71 ($349,247.71 + $2,500 for Dodge Truck) |
| Kent Williams | $351,747.71 |
| Karen Priest | $351,747.71 |
| Brenda Harbors | $351,747.71 |
| Duffy Williams | $351,747.71 (350,547.71 + $1,200 for Ford Tractor) |
| Scott Williams | $426,747.71 |

4

21.     As proven in Exhibit 7, the Trustee, Scott, distributed to himself $75,000.00 more than the other beneficiaries from Trust funds. The Trustee claimed that this extra $75,000.00 payment to himself was "Scott's Severance." (see Exhibit 5).

22.     The Trust does NOT give the Trustee the authority to give himself an additional $75,000.00 "severance" payment. The Trust states that the Trustee is to divide the Trust estate "into equal and partial shares for each living child of the Trustor." (See Exhibit 1, Article IV(E)). Indeed, the Trust specifically states that "it is the Trustor' [sic] desire that, absent unusual needs or emergency circumstances, all of the Trustor's children be treated fairly and receive approximately the same or equal benefit from the Trust estate." (Exhibit 1, Article IV(D)).

23.     Not only does the Trust not allow this $75,000 "severance" payment to himself, but the Trustee has also failed to provide any written documentation from Hugh's RV entitling himself to said $75,000.00 "severance" pay—meaning this severance pay cannot considered as a debt owed by Hugh's RV.

24.     Furthermore, the Trustee Scott was paid from Hugh's RV as a 1099 independent contractor (see Exhibit 10). There is no reason for a 1099 independent contractor to receive any "severance" pay.

25.     This $75,000 "severance pay" is a breach of the trustee's duty of loyalty, is self-dealing by the Trustee, is prima facie invalid, and is voidable by the beneficiaries. As the Utah Supreme Court stated,

> A trustee's duty of loyalty requires the trustee to administer the trust solely in the interest of the beneficiary. A trustee is not permitted to engage in self-dealing, or *to place himself in a position where it would be for his own benefit to violate his duty to the beneficiaries.* The prohibition against self-dealing does not depend upon proof of bad faith, but is absolute so as to avoid the possibility of fraud and the temptation of self-interest.
> Absent authorization from a court with jurisdiction over the administration of the trust or consent of the beneficiaries, any transaction involving self-dealing by a trustee is not only prima facie invalid, but is voidable by the beneficiaries,

regardless of any loss suffered by the trust estate, the payment of valuable consideration, or the existence of good faith. Even if the beneficiaries consent, the transaction is voidable unless the trustee has disclosed to the beneficiaries all the material facts which he knew or should have known concerning the transaction and the transaction was fair and reasonable in all respects. . .When a trustee violates his duty to the beneficiaries through self-dealing, the trustee is *personally liable* for any loss in value of the trust estate caused by the breach of trust.

*Wheeler By and Through Wheeler v. Mann*, 763 P.2d 758 (Utah 1988) (internal quotations and citations omitted) (emphasis added).

26. Because Scott has breached his duty through self-dealing, he should be held personally liable for all loss in value and expenses to the trust estate caused by the breach of trust, including any attorney fees and the cost of any arbitration.

27. Furthermore, under Utah Code §75-7-706(2)(a), a trustee may be removed if "the trustee has committed a serious breach of trust."

28. The Trustee engaging in self-dealing and favoring himself $75,000.00 more than the other beneficiaries constitute a serious breach of fiduciary duty under Utah Code §75-7-803.

29. Therefore, Scott (1) should be removed as trustee of the Trust, (2) should reimburse the trust $75,000.00 that he inappropriately took for himself, and (3) should be held personally liable for all expenses related to the Trustee's self-dealing—including any costs of arbitration and attorney fees that were the result of his inappropriate self-dealing.

**SECOND BREACH OF FIDUCIARY DUTY:**
**USING HUGH'S RV FUNDS & TRUST FUNDS TO PAY FOR PERSONAL EXPENSES**

30. From 2017 until Hugh's death in 2019, Scott had full access to Mr. Williams' personal funds, Hugh's RV's funds, and Trust funds.

31. On August 31, 2021, Scott provided a "General Ledger" of all transactions for Hugh's RV (from 2017-2019), as well as a "General Ledger" for all transactions for the Trust (2019-2021). (Exhibits 10 & 11). The General Ledgers prove that Scott used Mr. Williams funds as his own personal piggy bank.

6

**32.** Utah Code §75-9-114(2)(b) requires an Agent under a Power of Attorney to "act so as not to create a conflict of interest that impairs the agent's ability to act impartially in the principal's best interest." Furthermore, Utah Code §75-9-114(2)(d) requires an Agent to "keep a record of all receipts, disbursements, and transactions made on behalf of the principal."

**33.** Furthermore, Utah Code §75-7-803, requires that "the trustee shall act impartially in investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests."

**34.** Scott has admitted that he intermixed Hugh's RV funds, Trust funds, and personal funds (see Exhibit 12). This is inappropriate in a number of ways.

**35.** First, as shown in the General Ledger, Scott used $280,124.05 ($259,889.18 of Hugh's RV funds and $20,234.87 of Trust funds) to pay his personal American Express account (6-32004) (which account also included his wife, Candy Williams (6-31014)). (see Exhibit 13).

**36.** Assuming that all "business expenses" in the General Ledgers were indeed legitimate business expenses (a point the Petitioner does not concede), the General Ledgers indicate that there were only a total of $181,103.79 "business expenses" that were paid for by Scott's American Express (see Exhibits 10 & 11).

**37.** This means that even if all the claimed "business expenses" were legitimate (again, a point the Petitioner does not concede), that Scott abused Hugh's RV funds to pay $78,785.39 and Scott also abused Trust funds to pay $20,234.87—a total of $99,020.26—to pay for his own personal expenses on his personal American Express.

**38.** Second, the General Ledger indicates an unaccounted for "Owner's Draw" on 12/31/2018 of $55,200.14 for which there is no accounting provided.

**39.** Third, Scott used Hugh's RV to pay for personal expenses such as food and fuel. The General Ledger indicates that Scott spent $26,228.24 of Hugh's RV funds to pay for his

personal Fuel. Furthermore, Scott used $5,467.51 of Hugh's RV funds to pay for his personal food. A total of $31,695.41. (see Exhibit 14).

40.    Fourth, Hugh's RV's tax returns included these claimed payments made to Scott's personal American Express as a deduction for Hugh's RV (Exhibit 15). However, it is also believed that Scott also claimed these deductions for himself on his own personal tax return—which fraudulent act would constitute a significant deduction on his own personal taxes.

41.    Again, Scott as Mr. Williams' appointed fiduciary "is not permitted to engage in self-dealing, or 'to place himself in a position where it would be for his own benefit to violate his duty to the beneficiaries.' The prohibition against self-dealing does not depend upon proof of bad faith but is absolute so as to avoid the possibility of fraud and the temptation of self-interest." *Wheeler By and Through Wheeler v. Mann*, 763 P.2d 758 (Utah 1988).

42.    Furthermore, under Utah Code §75-7-706(2)(a), a trustee may be removed if "the trustee has committed a serious breach of trust."

43.    Scott, favoring himself by using $99,020.26 of Hugh's RV and Trust funds to pay his own personal American Express and at least $31,695.41 to pay for his personal fuel and food constitutes a serious breach of fiduciary duty under Utah Code §75-7-803.

44.    Therefore, Scott should be removed as trustee of the Trust, should reimburse the trust at least $130,715.67 that he inappropriately used to pay personal expenses, and should be held personally liable for all expenses related to his self-dealing including the cost of any attorney fees or arbitration costs.

45.    Utah Code §75-7-802(2) states "...a sale, encumbrance, or other transaction involving the investment or management of trust property entered into by the trustee for the trustee's own personal account or which is otherwise affected by a conflict between the trustee's

8

fiduciary and personal interests is voidable by a beneficiary affected by the transaction…" *Wheeler By and Through Wheeler v. Mann*, 763 P.2d 758 (Utah 1988).

46.     A forensic accounting should be conducted—at the Trustee Scott's expense—to determine the scope of Scott's misuse of Mr. Williams' funds.

47.     Finally, Utah Code Utah Code §75-7-802(2) states that "[a]n agent that violates this chapter is liable to the principal or the principal's successors in interest for the amount required to: (1) restore the value of the principal's property to what it would have been had the violation not occurred; and (2) reimburse the principal or the principal's successors in interest for the attorney fees and costs paid on the agent's behalf."

48.     Because Scott has violated his duty through self-dealing, he should be held personally liable for all loss in value and expenses to the trust estate caused by the breach of trust, including any attorney fees and the cost of any arbitration.

### THIRD BREACH OF FIDUCIARY DUTY:
### COMMINGLING TRUST FUNDS, HUGH'S RV FUNDS, AND PERSONAL FUNDS

49.     Utah Code §75-7-808 (2) states that "a trustee shall keep trust property separate from the trustee's own property."

50.     Utah Code §75-9-114(2)(b) requires an Agent under a Power of Attorney to "act so as not to create a conflict of interest that impairs the agent's ability to act impartially in the principal's best interest." Furthermore, Utah Code §75-9-114(2)(d) requires an Agent to "keep a record of all receipts, disbursements, and transactions made on behalf of the principal."

51.     Scott, in his roles as Mr. Williams Agent, Trustee of the Trust, and as a paid Independent Contractor for Hugh's RV had a fiduciary duty to keep those roles separate.

52.     This was not done, which point Scott concedes (see Exhibit 12).

9

53.     As already previously stated, General Ledger shows Scott used $280,124.05 ($259,889.18 of Hugh's RV funds and $20,234.87 of Trust funds) to pay his personal American Express account. The General Ledger also includes a total of $181,103.79 of "business expenses" that were paid for from his American Express. (see Exhibit 13).

54.     This includes at least $31,695.41 for fuel and food that was paid for by Hugh's RV—among various other expenses, that were claimed to be "business expenses." (see Exhibit 14).

55.     Scott, in his roles as Mr. Williams Agent, Trustee of the Trust, and as a paid Independent Contractor for Hugh's RV had a fiduciary duty to keep those roles separate. Instead, Scott commingled Hugh's RV assets, Trust Assets, and his personal assets.

56.     As an Independent Contractor Scott should have sent invoices to Hugh's RV detailing fees and expenses that were owed by Hugh's RV. This was not done.

57.     As Mr. Williams' fiduciary, Scott had a legal obligation to keep a record of all receipts, disbursements, and transactions made on behalf of the Mr. Williams. This was not done.

58.     As the Trustee of the Trust, Scott had a fiduciary duty to ensure that the distributions were in accordance with the terms of the Trust. This was not done.

59.     Utah Code §75-7-802(2) states "…a sale, encumbrance, or other transaction involving the investment or management of trust property entered into by the trustee for the trustee's own personal account or which is otherwise affected by a conflict between the trustee's fiduciary and personal interests is voidable by a beneficiary affected by the transaction…"

60.     A forensic accounting should be conducted—at the Trustee Scott's expense—to determine the scope of Scott's misuse of Mr. Williams' funds and Trust funds.

61.     Finally, Utah Code Utah Code §75-9-117 states that "[a]n agent that violates this chapter is liable to the principal or the principal's successors in interest for the amount required to:

(1) restore the value of the principal's property to what it would have been had the violation not occurred; and (2) reimburse the principal or the principal's successors in interest for the attorney fees and costs paid on the agent's behalf."

62.     Because Scott has violated his fiduciary duty, by commingling Hugh's RV assets, Trust assets, and his personal assets, (1) a forensic accounting should be performed to determine the scope of Scott's abuse and (2) Scott should be held personally liable for all loss in value and expenses to the trust estate caused by the breach of trust, including any attorney fees and the cost of any arbitration.

### FOURTH BREACH OF FIDUCIARY DUTY: VEHICLES AND BOATS FROM STORAGE

63.     Utah Code §75-7-803, requires that "the trustee shall act impartially in investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests."

64.     The Trust requires the Trustee to divide the Trust estate "into equal and partial shares for each living child of the Trustor." (See Exhibit 1, Article IV(E)).

65.     It is believed that at the time of Mr. Williams death, there were vehicles and boats stored in a storage unit located at: 300 South Hwy 89, North Salt Lake, Utah 84054.

66.     In addition, on the invoice from attorneys Plant Christensen & Kanell dated January 9, 2020, it indicates that there were boats and trucks on the Hugh's RV lot. (Exhibit 16)

67.     Furthermore, on the invoice from attorneys Plant Christensen & Kanell dated March 19, 2020, it indicates that the attorney prepared "storage auction notices for Davis County Clipper." (Exhibit 17).

68.     The sale or transfer or any accounting of this property has never been included in any accounting provided by the Trustee or in any distribution to the beneficiaries.

11

69.     Because the Trustee did not account for or distribute the value of the vehicles and boats that were held in storage, he has seriously breached of fiduciary duty under Utah Code §75-7-803. Therefore, Scott should be removed as trustee of the Trust and should reimburse the Trust for the value of any vehicles and boats that were not equally divided and properly distributed.

## FIFTH BREACH OF FIDUCIARY DUTY:
### HUGH'S RV INVENTORY

70.     Utah Code §75-7-803, requires that "the trustee shall act impartially in investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests."

71.     The Trust requires the Trustee to divide the Trust estate "into equal and partial shares for each living child of the Trustor."  (See Exhibit 1, Article IV(E)).

72.     At the closing of the sale of the Hugh's RV property, two loans totaling $142,110.27 was repaid to Utah First Credit Union ($49,514.40 and $92,595.87). (see Exhibit 6)

73.      It is believed that the $142,110.27 were loans used for purchasing inventory for Hugh's RV.

74.     This $142,110.27 worth of inventory was never accounted for or divided and distributed as is required by the terms of the Trust.

75.     Because the Trustee did not account for or distribute the $142,110.27 of inventory, he has seriously breached of fiduciary duty under Utah Code §75-7-803. Therefore, Scott should be removed as trustee of the Trust and should reimburse the Trust for the value of this inventory that was not equally divided and properly distributed.

Case 9:23-ap-09001-BPH    Doc 35-1 Filed 11/05/23 Page 15 of 20

## SIXTH BREACH OF FIDUCIARY DUTY:
## <u>DONATIONS</u>

**76.** Utah Code §75-7-803, requires that "the trustee shall act impartially in investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests."

**77.** The Trust requires the Trustee to divide the Trust estate "into equal and partial shares for each living child of the Trustor." (See Exhibit 1, Article IV(E)).

**78.** From March – September 2019, Scott made six $800 (total $4,800) donations to North Canyon 3rd Ward. (Exhibit 17).

**79.** The states that the Trustee is to divide the Trust estate "into equal and partial shares for each living child of the Trustor." (See Exhibit 1, Article IV(E)).

**80.** The Trust does not give the Trustee the authority to make distribution to anyone other than the children of the Trustor. It is unclear why these payments were made, especially considering they were made after Mr. Williams had passed away.

**81.** Therefore, Scott should be removed as trustee of the Trust and should reimburse the trust for the $4,800 unexplainably paid to North Canyon 3rd Ward.

## SEVENTH BREACH OF FIDUCIARY DUTY:
## <u>FAILURE TO ADMINISTER THE TRUST EXPEDITIOUSLY</u>

**82.** Utah Code §75-7-80 states, "Upon acceptance of a trusteeship, the trustee shall administer the trust expeditiously and in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with this chapter.

**83.** The Trustee has failed to administer the Trust expeditiously or in good faith.

**84.** After the sale of the property in June 2019, the Trustee made an initial distribution (see Exhibit 2).

13

**89.**     According to the General Ledger, the Trust bank account has $78,715.86—which includes $50,000 that Scott withheld from the initial distribution for "creditors." (see Exhibit 11).

**90.**     Utah Code dictates that Utah Code § 75-3-803(3) indicates that any creditor's claim against the estate that is not brought within one year of the decedent's death is barred.

**91.**     Therefore, any claim that could have been filed against the estate has already been filed.  There is no reason to hold any more money for "creditors."

**92.**     Scott has failed to administer the trust expeditiously and in good faith in accordance with Utah Code §75-7-80, therefore, he should be removed as trustee and another trustee be appointed in his stead, that will administer the trust expeditiously and in good faith.

## FEES

**93.**     Utah Code §78B-11-122 states that "An arbitrator may award reasonable attorney fees and other reasonable expenses of arbitration if the award is authorized by law in a civil action involving the same claim or by the agreement of the parties in the arbitration proceeding."

**94.**     Although the Trust indicates that if a claim brought against the trustee has merit, "the costs of the arbitration process shall be paid by the Trust," Scott should still be held personally liable for any attorney fees and the cost of arbitration for the following reasons.

**95.**     First, much of the misuse and abuse of funds happened while Scott was acting as Mr. Williams Agent under Mr. Williams' Power of Attorney.  Mr. Williams' Power of Attorney contains no such provision for payment of the costs of arbitration.

**96.**     Second, Utah law very strongly seeks to discourage self-dealing by a Trustee and dictates that in cases of self-dealing the Trust should *not* pay the associated fees. Indeed, in *Wheeler*, the Utah Supreme Court stated that, "when a trustee violates his duty to the beneficiaries through self-dealing, the trustee is personally liable for any loss in value of the trust estate caused by the breach of trust." *Wheeler By and Through Wheeler v. Mann*, 763 P.2d 758 (Utah 1988).

15

Any attorney fees and any costs associated with arbitration paid for by the Trust would be a loss in value to the trust estate. Scott, as the fiduciary, should be held personally liable for any loss of value to the trust estate that was a result of his own self-dealing.

**97.** Third, Utah Code §75-9-117 states that "[a]n agent that violates this chapter is liable to the principal or the principal's successors in interest for the amount required to: (1) restore the value of the principal's property to what it would have been had the violation not occurred; and (2) reimburse the principal or the principal's successors in interest for the attorney fees and costs paid on the agent's behalf." Because Scott violated his duties as an Agent under Mr. Williams' Power of Attorney, he is liable to restore the value of the property and to reimburse the principal's successors in interest for attorney fees and costs. All attorney fees and costs are a direct result of Scott's inappropriate actions.

**98.** Therefore, Scott should be held personally liable for any attorney fees or arbitration costs that were a result of his inappropriate acts as the fiduciary of Mr. Williams.

## DISINHERITANCE PROVISIONS

**99.** Article XIII of the Trust contains a "No Contest Clause" or "Disinheritance Provision" that states that if a beneficiary "shall contest, either directly or indirectly, any aspect of this Trust Agreement or attempt to set aside, nullify, or void the Trust or distribution of the Trust Estate in a timely manner…any beneficial interest in the trust of the contesting party shall be terminated…" (Exhibit 1, Articl XIII).

**100.** This Petition in no way contests or challenges any of provisions of the Trust.

**101.** Furthermore, Utah Code §75-7-112 states, "A provision in a trust instrument purporting to penalize a beneficiary by charging the beneficiary's interest in the trust, or to penalize the beneficiary in another manner, for instituting a proceeding to challenge the acts of the trustee

16

or other fiduciary of a trust, or for instituting other proceedings relating to the trust *is <u>unenforceable</u> if probable cause exists for instituting the proceedings*." (emphasis added).

102.     Probable cause exists for this request to remove the Trustee based on the following:

    a.  Scott favoring himself by distributing to himself with $75,000.00 more than the other beneficiaries.

    b.  Scott using Hugh's RV funds and Trust funds to pay (at least) $130,715.67 in personal expenses.

    c.  Scott Commingling Hugh's RV assets, Trust assets, and his own personal assets, making it nearly impossible to determine which (if any) of the "business expenses" he claimed he paid for on with his personal credit card are legitimate.

    d.  Scott not distributing vehicles and boats that were owned and in storage by Hugh's RV equally.

    e.  Scott not distributing the remaining inventory from Hugh's RV (which inventory was purchased with a loan that was paid off at the closing of the sale of the Hugh's RV property) equally.

    f.  Scott making consistent payments (totaling $4,800) for tithing from Trust funds for months after Mr. Williams had passed away.

    g.  Scott failing to expeditiously administer the Trust, nearly 3 years after the death of Mr. Williams.

103.     Because probable cause exists for instituting this proceeding to remove the Trustee, any provision that seeks to penalize or disinherit a beneficiary is unenforceable.

17

**WHEREFORE**, Petitioner requests the following:

1.  Set a time and place for an Arbitration hearing on this Petition.

2.  Remove Scott K. Williams as Trustee of *The Hugh L. Williams Family Trust.*

3.  Appoint a successor Trustee of *The Hugh L. Williams Family Trust* in accordance with the terms of the Trust.

4.  Order an independent forensic accounting of Hugh's RV and Trust assets to determine the misuse of said assets by Scott K. Williams.

5.  Order Scott K. Williams to reimburse the Trust for all funds he inappropriately took from Hugh's RV and the Trust. Said funds are to be divided equally and distributed among the beneficiaries in accordance with the terms of the Trust.

6.  Hold Scott K. Williams personally liable for any attorney fees or arbitration costs that were a result of his inappropriate acts as the fiduciary of Mr. Williams and order Scott K. Williams to personally pay all said fees.

Dated this January 14, 2022.

 /s/ Zenock Bishop
ZENOCK BISHOP
Attorney for Petitioner